## SCHMIDT *v.* OREGON GOLD MINING CO.

[40 Pac. 406, 1014.]

1. APPEAL FROM CONSENT DECREE—CODE, § 536.—A decree entered at the request of a party, the other party being present and expressly consenting thereto, cannot be appealed from by either side: *Rader* v. *Barr*, 22 Or. 496, approved and followed. Such a decree will be governed by the provisions of section 536, Hill's Code, although, strictly speaking, it is not a decree given either by confession or for want of an answer.

2. CONSENT DECREE—CONDITIONS BEYOND THE SCOPE OF THE PLEADINGS.— Where the complaint in a suit by a trustee to foreclose the mortgage prays judgment for reasonable attorney fees and for professional services rendered therein, and the parties consent that judgment be rendered in accordance therewith, provisions in the decree that the trustee recover the attorney fees and fees for other professional services in trust for the parties rendering the services are not so entirely without the scope of the pleadings, and the authority of the parties to agree thereto, that the appellate court will declare them void at the instance of the party requesting that such judgment be rendered.

3. CONSENT DECREE—ISSUES MADE BY THE PLEADINGS.— A judgment or decree entered upon the pleadings or after a contest must fall within the issues made by the pleadings, but consent decrees will be valid and binding if they fall within the general scope of the case.

4. POWER OF ATTORNEY—PRESUMPTION—PRACTICE.— The courts must presume, in the absence of a showing to the contrary, that orders and proceedings of attorneys in the conduct of cases are made and conducted under proper authority from their clients, and when it is desired to impeach the acts of attorneys as beyond the terms of their employment, the proper method is to move in the lower court where the facts may be determined by testimony, rather than by an appeal from the objectionable proceeding.

APPEAL from Union: MORTON D. CLIFFORD, Judge.

This suit was instituted to foreclose three several mortgages executed by the Oregon Gold Mining Com-

pany to A. L. Schmidt as trustee to secure the payment of certain bonds of the company, bearing dates respectively May first and October first, eighteen hundred and eighty-eight, and September first, eighteen hundred and eighty-nine. Each of said mortgages in effect provides that in case of default in the conditions imposed the trustee might foreclose and sell the property described therein, and that out of the proceeds he should be allowed for attorney's fees such sum as the court might adjudge reasonable, together with all necessary costs and expenses incurred, including a reasonable compensation to himself for the execution of the trust. The complaint sets forth by appropriate allegations the legal purport of these promises, and the prayer, among other things, is "for judgment and decree fixing and determining the amount to which plaintiff is entitled in this suit for reasonable attorney's fees for foreclosing the said mortgage, and for professional services herein, and declaring the same a lien upon the said mortgaged property, rights, privileges, and franchises, and directing payment therefor out of the proceeds of said mines, and the proceeds arising from the sale of said mortgaged property." The decree, among other things, contains the following findings and provisions, viz.: "Now at this day this cause came on to be heard upon the motion of plaintiff for judgment and decree as prayed for in the complaint herein, the plaintiff appearing by T. Calvin Hyde and T. H. Crawford, of counsel, and the defendant by C. A. Johns and W. F. Butcher of counsel. And it appearing to the court that the referee heretofore appointed herein by the court to take the testimony in this case, and to report the same to the court, together with his findings of fact and conclusions of law thereon, namely, Charles F. Hyde, an attorney of this court, did, with

the assistance of John Wheeler, Esq., the official stenographer of this court, proceed to and take the testimony in full of the plaintiff in this cause regularly as in his appointment ordered and directed, at which time the said defendant notified the plaintiff by and through its said attorneys that defendant would offer no testimony, but would consent to a judgment and decree as prayed for in plaintiff's complaint, and that for this reason no testimony was offered and taken on behalf of the defendant by said referee in this cause; and it further appearing to the court that the said referee has filed in court the testimony so taken by him on behalf of the plaintiff, and the same fully sustains the allegations of plaintiff's complaint, and that said defendant by his said attorneys in open court here now consents that a judgment and decree may · be here now made and entered in this cause in favor of said plaintiff, A. L. Schmidt, trustee, and against the said defendant, the Oregon Gold Mining Company, as prayed for in plaintiff's complaint, and that in said judgment and decree the court shall fix the referee's fees at the sum of two hundred dollars, the stenographer's fees at the sum of —— dollars, and the plaintiff's attorneys' fees at such sum as the court may find reasonable for the services performed, and that the referee's fees, stenographer's fees, and the plaintiff's attorneys' fees shall be a preferred lien upon the mortgaged property of the defendant, and the proceeds thereof, in favor of the said referee, stenographer, and the plaintiff's said attorneys, for the respective amounts due each as found and settled by the parties and the court, and that they or either of them may have execution therefor against the said mortgaged property." ⁂ ⁂ ⁂

"18. The court further finds that the sum of five thousand five hundred and fifty dollars is a reasonable

attorney's fee in this suit for the foreclosure of the said several mortgages and trust deeds, and that of said sum plaintiff's attorney, T. Calvin Hyde, should receive the sum of two thousand seven hundred and fifty dollars, and the plaintiff's attorney, T. H. Crawford, should receive the sum of two thousand seven hundred and fifty dollars, and that said amounts so allowed each of said attorneys should be a preferred lien upon the said mortgaged premises, and upon the funds arising from the sale of the said mortgaged property, for the payment of the same, for the enforcement of which either of said attorneys should have execution. * * * 19. That upon the agreement of the parties herein made in open court, the court finds and fixes the compensation of Charles F. Hyde, referee herein, at the sum of two hundred dollars, and the compensation of the court stenographer, John Wheeler, at the sum of one hundred and fifty dollars, and that the compensation and fees of said referee and stenographer should also be preferred liens upon the said mortgaged property, and the proceeds thereof, for the payment of the same." * * * "It is therefore ordered, considered, adjudged, and decreed, that plaintiff A. L. Schmidt, as trustee for the holders of said bonds, have and recover off and from the defendant * * * the further sum of five thousand five hundred dollars, reasonable attorneys' fees herein, in trust for T. Calvin Hyde and T. H. Crawford, plaintiff's attorneys herein; and for the further sum of two hundred dollars, referee's fees, in trust for Charles F. Hyde, referee herein; and for the further sum of one hundred and fifty dollars, stenographer's fees herein, in trust for John Wheeler, court stenographer, and for the costs and disbursements of this suit. * * * And it is further ordered, adjudged,

and decreed that the judgment herein made and entered for attorneys' fees, stenographer's fees, and costs and disbursements, be and the same is hereby adjudged and decreed to be a first lien upon all the property described in said several mortgage deeds, and the proceeds arising from the sale thereof, * * * and that the proceeds arising from such sale be applied to the payment of the attorneys' fees decreed in this suit, the referee's fees, and the stenographer's fees."

The notice of appeal contains nine assignments of error, which may be comprised in two as follows: *First,* the court erred in finding, adjudging, and decreeing that plaintiff recover off and from defendant five thousand five hundred dollars attorneys' fees in trust for T. Calvin Hyde and T. H. Crawford, two hundred dollars in trust for Charles F. Hyde, referee, and the further sum of one hundred and fifty dollars in trust for John Wheeler, stenographer, and that these several sums should be a first and superior lien upon the property described in the said several mortgages, and directing the same to be first paid out of the proceeds thereof; and, *second,* the court erred in not adjudging and decreeing the amount found to be reasonable as attorneys' fees to plaintiff, and in not decreeing to plaintiff a reasonable sum as compensation for services under his trust as such trustee. The appeal is taken by Messrs. Dolph, Nixon and Dolph, as attorneys for plaintiff. The defendant made no appearance in this court, but T. Calvin Hyde and T. H. Crawford, in their own behalf, and as attorneys for Charles F. Hyde and John Wheeler, attack the appeal by a motion to dismiss it, and filed a brief herein. The ground mainly relied upon for dismissal is that the decree

appealed from was given by consent, and is therefore
not appealable.                              DISMISSED.

Opposed to the motion was a brief by *Messrs. Dolph,
Nixon and Dolph,* and an oral argument by *Mr. Joseph N.
Dolph,* making these points:

Under the allegations of the complaint, and the
provisions of the mortgages concerning costs and
expenses of foreclosure, any allowance for attor-
neys' fees should have been made to the plaintiff.
Messrs. Hyde and Crawford were not the only attor-
neys employed by the plaintiff. The question for this
court to consider is whether the court below erred in
attempting, without any allegation in the complaint to
give it jurisdiction of the subject-matter, to render a
decree in favor of persons not parties to the suit and
against a party with whom they had no contract; to
make a contract between the plaintiff and his attor-
neys without the knowledge or consent of the plain-
tiff; and without allegations as to the value or the
character or the extent of the services rendered, and
without notice to the plaintiff to adjudicate a claim of
plaintiff's attorneys against their client. It would
seem as if it were unnecessary to submit arguments
to show that such a proceeding is not warranted by
law and is without precedent in practice. That a
judgment or decree cannot be rendered in an action
or suit for or against a person not a party is an ele-
mental principal of law. It would be idle to expect to
find a decision directly in point for such a thing as
was attempted in this case. It was probably never
before attempted by any court. The decree in so far
as it purports to be a decree in favor of Messrs.
Hyde and Crawford was made without jurisdiction and
is void: Freeman on Judgments, § 154, 3d ed.

The statutes of Oregon provide in what cases and to what extent an attorney has a lien for services and in what manner such lien may be secured: Hill's Code, § 1044. Subdivision 4 provides for a lien for attorney's fees, and that such lien shall be subordinate to the rights existing between the parties to the action, suit, or proceeding. As to referee's fees and stenographer's fees all that it is necessary to say is that the Code provides what fees may be taxed in a suit, and the manner of their taxation.

A decree or judgment adjudicating a matter outside the issue raised by the pleadings is an absolute nullity and open to collateral attack: Beach's Modern Equity Practice, § 790; Gibson's Suits in Chancery, § 539; *Jones* v. *Davenport,* 45 N. J. Eq. 77; *Reynolds* v. *Stockton,* 43 N. J. Eq. 211; *Elliott* v. *Pell,* 1 Paige, 263; *Tripp* v. *Vincent,* 3 Barb. Ch. 613; *Goodhue* v. *Churchman,* 1 Barb. Ch. 596.

## On Rehearing.

No case like this one has come under our observation, and we hope for the honor of the legal profession no case like it is to be found in the reported decisions. The court evidently proceeded upon the theory that the provisions of the decree appealed from were adjudications of rights between the parties to the suit, whereas they are solely concerning claims, demands, or rights between the attorneys for plaintiff and the referee and stenographer on one side, and the plaintiff on the other. The supposed consent upon which they are based is the consent of the attorneys for the plaintiff agreeing with themselves for the plaintiff to an adjustment of claims of their own against the plaintiff, and to a decree against the plaintiff in their favor.

There is a salutary principle of law coeval with
the history of law itself, and which no court in any
civilized country has ever yet failed to apply and en-
force, which, even if the matters adjudicated or at-
tempted to be adjudicated had been within the issues
made by the pleadings, and the attorneys had been
parties to the suit, would have made the transaction
wholly void.  It is the rule that prohibits all persons
having fiduciary relations with others from using their
position, power, or authority for their own advantage.

The attorneys for plaintiff instead of taking judg-
ment and decree in favor of the plaintiff, procured a
decree which is in legal effect a decree in favor of
themselves and against the plaintiff.  It is immaterial
how this was done.  No consent, as we shall pres
ently show, of the attorneys for the plaintiff could au-
thorize such a proceeding.  The decree does not pro-
vide that the plaintiff shall recover the five thousand
five hundred dollars in trust for the attorneys, to be
paid after the mortgaged debt is satisfied or *pro rata*
with the bondholders or with the other expenses, but
to be first paid, even if such payment exhausts the
entire proceeds of the property.

Such a judicial proceeding is a scandal upon the
administration of justice, and if allowed to stand must
weaken the respect for the courts and the confidence
of citizens in the security for their rights of property,
and prevent the investment in Oregon of capital from
other states and from foreign countries.  There could
be but one greater reproach upon our judicial system
and the legal profession, and that would be to have
the law deliberately settled by the highest court in
the state that the party injured in such a case was
precluded by the act of his attorney from having the
error corrected and the wrong righted on appeal.  It

must receive the severest condemnation by every upright judge and every honorable lawyer. It is not such a transaction as to induce a court of equity to adopt a new principle of equity or to strain the application of an established principle to protect it from judicial investigation, or to prevent the righting of the wrong done. It is entirely immaterial whether the amount decreed to the plaintiff's attorneys was reasonable or unreasonable, so far as the legal questions are concerned. It is a matter of comparative unimportance whether the plaintiff in this particular case shall be robbed or not; but it is of the utmost importance to the profession, to suitors, and to the courts that the legal questions involved should be properly settled. If the attorneys for a plaintiff can by their own act, acting for themselves and at the same time for their client, consent to a decree and bind their client by their consent by which five thousand five hundred dollars of the amount their client is entitled to recover is decreed to them so that the wrong cannot be considered and righted on appeal, there is nothing to prevent them from so binding their client to a decree by which the entire relief the plaintiff is entitled to is decreed to the attorneys instead of to the plaintiff, or by which the plaintiff is decreed to recover the entire relief he is entitled to in trust for the attorneys. There can be no distinction drawn between the two cases.

The plaintiff's attorneys had no authority to consent to the provisions of the decree complained of. If upon the face of the decree it is held that the decree appears to have been consented to by the plaintiff's attorneys, and, therefore, by the plaintiff, it is too plain for argument that an attorney at law has

28 OR.—2.

no implied authority to enter a consent decree, by which a definite fee is given him, and made a first lien upon the property which is the subject of the action. The authority of an attorney as an attorney at law to bind his client has never been extended to such a case. His authority in the management of a suit is only to do in behalf of his client all acts in and out of court, necessary to the prosecution and management of the suit, and which affect the remedy only and not the cause of action: *Moulton* v. *Bowker,* 115 Mass. 36 (15 Am. Rep. 72). An attorney is not *dominus litis.* His relation with his client is fiduciary: *Hughes* v. *Wilson,* 26 N. E. 50. An attorney employed to foreclose a lien against land has no lien entitling him to a sale thereof: *McCoy* v. *McCoy,* 15 S. E. 973. And it has been held that he cannot give up the security of his client without payment or express authority: *Terhune* v. *Colton,* 2 Stock. Ch. 21; *Tankersley* v. *Anderson,* 4 Dessaus, 45. Nor to release sureties upon the claim of his client: *Savings Insurance* v. *Chinn,* 7 Bush (Ky.), 539; *Givens* v. *Brisco,* 3 J. J. Marsh, 529, 532; *Union Bank* v. *Govan,* 10 Sm. and M. 333. Nor to discharge a lien created by levy of execution: *Banks* v. *Evans,* 10 Sm. and M. 35 (58 Am. Dec. 734); *Benedict* v. *Smith,* 10 Paige, 126. Nor to release a lien obtained by judgment; or to discharge any security resulting from his prosecution of the claim. And an honest belief that he is acting in his client's interest cannot supply the defect of authority to make such an arrangement: *Wilson* v. *Jennings,* 3 Ohio St. 528. He may control the manner of conducting a cause, but cannot waive any substantial acquired right of his client: *Howe* v. *Lawrence,* 2 Zab. 99.

It is also held that an attorney cannot release a third person for the purpose of making him a compe-

tent witness: *Shores* v. *Caswell,* 13 Metc. 413; Succession of Weigel, 18 La. Ann. 49; *Marshall* v. *Nagel,* 1 Bailey, 308.   Nor discharge an indorser upon a note committed to him for collection without satisfaction or the express consent of his client: *East River Bank* v. *Kennedy,* 9 Bosw. 543; *Bowne* v. *Hyde,* 6 Barb. 392; *Kellogg* v. *Gilbert,* 10 Johns. 220 (6 Am. Dec. 335); *Simonton* v. *Barrell,* 21 Wend. 362; *York Bank* v. *Appleton,* 17 Me. 55; *Varnum* v. *Bellamy,* 4 McLean, 87.   Nor sell or assign a judgment of his client: *Maxwell* v. *Owen,* 7 Coldwell, 630; *Baldwin* v. *Merrill,* 8 Humph. 132; *Campbell's Appeal,* 29 Penn. St. 401 (72 Am. Dec. 641); *Rowland* v. *Slate,* 58 Penn. St. 196.   Nor discharge a judgment or execution except upon payment in full: *Beers* v. *Hendrickson,* 45 N. Y. 665; *Lewis* v. *Woodruff,* 15 How. Pr. 539; *Wilson* v. *Wadleigh,* 36 Me. 496; *Harrow* v. *Farrow,* 7 B. Mon. 126 (45 Am. Dec. 60); *Chambers* v. *Miller,* 7 Watts, 63.   Nor receive any other thing but lawful money in payment of his client's claim: *Stackhouse* v. *O'Hara,* 14 Penn. St. 88; *Harper* v. *Harvey,* 4 W. Va. 539; *Smock* v. *Dade,* 5 Rand. 639; *Jeter* v. *Haviland,* 24 Ga. 252; *Miller* v. *Edmonston,* 8 Blackf. 291; *Jones* v. *Ransom,* 3 Ind. 327; *Trumbull* v. *Nicholson,* 27 Ill. 149; *Lawson* v. *Bettison,* 7 Eng. 644; *Bailey* v. *Bagley,* 19 La. Ann. 172; *Wright* v. *Dailey,* 26 Texas, 730; *West* v. *Ball,* 12 Ala. 340; *Clark* v. *Kingsland,* 1 Sm. and M. 248.   Nor indorse a note left him for collection: *Child* v. *Eureka Powder Works,* 44 N. H. 354.   Nor compromise a suit: *Holker* v. *Parker,* 7 Cranch, 436; *Stokely* v. *Robinson,* 34 Penn. St. 315; *Huston* v. *Mitchell,* 14 S. and R. 307 (16 Am. Dec. 506); *Dodds* v. *Dodds,* 9 Penn. St. 315; *Abbe* v. *Rood,* 6 McLean, 106; *Derwort* v. *Loomer,* 21 Conn. 245; *Keller* v. *Scott,* 2 Sm. and M. 81.   Nor employ associate counsel, save in the absence of his client: *Briggs* v. *Georgia,* 10 Vt. 68.   Nor waive the right of inquisition: *Hadden* v. *Clark,* 2 Gratt. 107.   Nor accept service

of summons: *Masterson* v. *LeClaire,* 4 Minn. 163. Nor consent to a judgment against his client: *People* v. *Lanborn,* 1 Scam. 123. Nor enter a *retraxit: Lambert* v. *Sanford,* 2 Blackf. 137 (18 Am. Dec. 149). Nor make an agreement for suspension of proceedings upon a judgment: *Pendexter* v. *Vernon,* 9 Humph. 84. Nor discharge a trustee: *Quarles* v. *Porter,* 12 Mo. 76. Nor give an extension of time upon a debt due to his client: *Lockhart* v. *Wyatt,* 10 Ala. 231 (44 Am. Dec. 481). Nor transfer to another the property in a note committed to him for collection. Nor bind his client by an agreement to refund money overpaid: *Ireland* v. *Todd,* 36 Me. 149; see *Bingham* v. *Salene,* 15 Or. 208 (2 Am. St. Rep. 152) cited in brief of counsel for respondents.

See also section 219, Week's on Attorney at Law, for a full statement of what the attorney may not do by virtue of his retainer and without special authority.

The leading case upon the subject of purchases by persons thus occupying confidential relations towards the vendor is, probably, *Fox* v. *Mackreath,* 1 Lead. Cas. in Eq. part 1, White and Tudor (4th Am. ed.), 188, p. *115. There the court held that a purchase by a trustee for sale from his *cestui que trust,* although he may have given an adequate price and gained no advantage, should be set aside at the option of the *cestui que trust,* unless the connection between them had been dissolved, and the knowledge of the value of the property acquired by the trustee had been communicated to the *cestui que trust.* Exhaustive notes are added to the report of this case by the very able editors, and most of the cases relating to purchases by persons occupying confidential relations, are reviewed. We have cited these authorities concerning the powers of an attorney at law to bind his client, and concerning the relations between attorney and client to show, *first,* that

it was not within the power of plaintiff's attorneys of their own volition and by their own act, to consent, so as to bind their client, to a decree by which the relief which the plaintiff was supposed to be entitled to upon the complaint and upon consent of the defendant should be adjudged and decreed to them, the plaintiff's attorney, instead of to the plaintiff; *second,* to show how courts scrutinize the dealings of attorneys with their clients, and how jealously they protect the interests of the clients, and that therefore such a decree as the one in this cause will not be held to be a consent decree.

Upon the authorities above cited we respectfully contend that the agreement between counsel above recited was plainly beyond the power of counsel to make. It introduced new and important rights, and conferred them upon plaintiff's counsel, entirely unknown to either party. It materially changed and unsettled the rights of all the parties, and made them different from what they were under the mortgage. It postponed the rights of the plaintiff under the mortgage, as well as of the bondholders, to the rights of plaintiff's attorneys, by giving the attorneys a first lien on the mortgaged property. We submit that the taking of a decree by plaintiff's attorneys in their own favor and against their client was clearly not within their authority, was a violation of their obligations and duty as attorneys at law and as officers of the court, was a violation of their obligations and duties to their client, and in violation of the just, long established, and inflexible rule of law which requires not only common honesty but the utmost good faith in dealings of persons holding fiduciary relations with others and which renders all such transactions as the one in question void.

Was the decree on its face a consent decree? We believe that the court also erred in holding and deciding that the decree in question purports on its face to be a consent decree, so far, at least, as it relates to the matter of attorney's fees. The only motion made by plaintiff's attorneys or consent by them to the decree, so far as it relates to attorney's fees, is found in these words: "Now at this time this cause came on to be heard, on the motion of plaintiff, for a judgment and decree as prayed for in the complaint herein." The defendant, it is true, consented to several things concerning attorney's fees; but, as we have already stated, the defendant had no interest whatever in and no control whatever over the matter of the claim of the plaintiff's attorneys against the plaintiff for fees and could give no consent whatever which would bind anybody concerning the same. In conclusion, we have not hesitated to discuss freely the nature of the transaction concerning which we complain, and to present as forcibly as possible our reason for claiming that the court erred in dismissing the appeal. We have not examined all the cases in which the question of consent decrees has been discussed; but we repeat that we have not been able to find and we think there cannot be found a reported decision which holds that a decree to be a consent decree must not be between the parties to the suit, and must not be concerning a matter which is within the general scope of the case, that is to say, within the issues made by the pleadings; and we feel certain that no case can be found which holds that an attorney at law, representing his own interests and the interests of his client at the same time, can consent for his client so as to bind him to a decree adjudicating a claim of his own against his client without pleadings and without notice.

We have made and now submit this application to the court, not only because the interests of our client seemed to demand that it should be done, but because we believed the good name and honor of the legal profession required that the transaction in question and the legal questions involved should receive further consideration by the court.

Opinion by MR. JUSTICE WOLVERTON.

1. Section 536 of Hill's Code provides that "any party to a judgment or decree other than a judgment or decree given by confession, or for want of an answer, may appeal therefrom." The decree appealed from, in a strict sense, is neither a decree given by confession nor for want of an answer; but it has been held by this court that by consenting to the rendition of a judgment against himself the defendant, in effect, waives his answer, and thereby leaves no issue in the case to be tried; and that from such a judgment no appeal lies: *Rader* v. *Barr*, 22 Or. 496 (29 Pac. 889). In the present case the decree shows upon its face that the "defendant, by his said attorneys, in open court, here now consents that a judgment and decree may be here now made and entered * * * as prayed for in plaintiff's complaint." What more could plaintiff have obtained in the absence of an answer, or upon defendant's entire default? The recitals in the decree also show that the defendant gave its consent to the fixing of plaintiff's attorneys' fees by the court at such sum as it should find reasonable, and, there being no evidence in the record to guide it in determining what would be reasonable, we conclude that the parties intended that the court should ascertain the amount in its own way, and that they should

be bound by the result. And, further, it is apparent that the amount of the attorneys' fee which plaintiff should recover and have entered in the decree as the finding of the court was a matter not to be determined by the court *in invitum*. The simple fact that plaintiff did not complain of the court's judgment in fixing this sum at five thousand five hundred dollars would indicate that he so understood it, and expected to be fully bound thereby. All other conditions of the decree appear to be either deducible directly from the allegations of the complaint, or were specially consented to by the defendant. As to the matter of the referee's and stenographer's fees, the record shows that they were fixed and entered by the express agreement of both parties. So we have here a decree which the plaintiff, through his attorney, specifically requested the court to make, and to every feature of it which the defendant has upon the record consented. True, the record does not show upon its face that the plaintiff consented to the decree in the form as entered, but it was entered nevertheless at his expressed request, so that this decree is essentially a consent decree. The conditions, simply stated, are, the court is requested by one party to make certain findings, and to enter a decree thereon with certain definite conditions. To all this the other party consents, and the decree is entered. Now the party making the request appeals to this court, and demands that the decree be reversed in part, without even so much as moving the lower court to modify its findings, or the decree entered thereon, or calling its attention to errors and irregularities, so that the court could, upon its own motion, purge the record of its infirmities. To say the least, this is not fair treatment of the court below, and in support of its decree this court

will presume the consent of plaintiff to the entry thereof in its present form: Hayne's New Trial and Appeal, § 285, p. 846; *Parker* v. *Altschul,* 60 Cal. 380; *Lesse* v. *Clark,* 28 Cal. 36; *Wilson* v. *Dougherty,* 45 Cal. 35; *Reynolds* v. *Hosmer,* 45 Cal. 627. Consent excuses error, and ends all contention between the parties. It leaves nothing for the court to do but to enter what the parties have agreed upon, and when so entered the parties themselves are concluded. From such a decree there is no appeal: Beach on Modern Equity Practice, § 795; *Armstrong* v. *Cooper,* 11 Ill. 540. Under section 692 of the Revised Statutes of the United States the practice of the national courts is to entertain an appeal from a consent decree; but they will not decide any matters that appear to have been consented to by the parties, and if the errors complained of come within the waiver the decree of the court below will be affirmed: *Pacific Railroad* v. *Ketchum,* 101 U. S. 295. This court, however, is committed to the doctrine that no appeal lies from such a decree: *Rader* v. *Barr,* 22 Or. 496 (29 Pac. 889). For these reasons the appeal must be dismissed.

2. It is further claimed that, notwithstanding the parties may have consented to all the terms and conditions of the decree, yet that those portions thereof wherein it is found and decreed that plaintiff have and recover off and from the defendant two thousand seven hundred and fifty dollars in trust for T. Calvin Hyde, two thousand seven hundred and fifty dollars in trust for T. H. Crawford, two hundred dollars in trust for Charles F. Hyde, and one hundred and fifty dollars in trust for John Wheeler, are entirely without the scope of the complaint, and for that reason void, and therefore reversible upon appeal. Undoubtedly, under

the allegations of the complaint, the plaintiff could recover the fees named. He sues in the capacity of trustee, and whatever he may recover by reason of the decree would be in trust for the bondholders. Now, if, at his own request, the court has decreed that he recover these certain fees in trust for the parties named, who, for all that appears of record, have earned them, when, at the same time, he, as trustee for the bondholders, is under personal obligations to these parties for services rendered in the suit instituted by him, we cannot say that these provisions are so entirely without the scope of the pleadings, and the authority of the parties to agree to under them, as that the court will declare them void at the instance of a party requesting the court to enter just such a decree. We therefore consider the point not well taken.

As to the error assigned because the court did not ascertain and decree to plaintiff a reasonable sum as compensation for services rendered as trustee, if the question was properly here we could not consider it, as no testimony is found in the record upon which to base such a finding and decree.    DISMISSED.

ON REHEARING.

[40 Pac. 1014.]

Opinion by MR. JUSTICE WOLVERTON.

A motion for rehearing having been filed in this case, and with it a vigorous and very able brief by Messrs. Dolph, Nixon and Dolph, of counsel for appellants, we have been impelled to review with much care and pains our former opinion, but with the same result. When the former opinion was rendered we had some misgivings as to whether we were right in hold-

ing that the provisions of the decree concerning attorneys', referee's, and stenogragher's fees were not so entirely without the scope of the pleadings as to render them void, simply because we had been cited to no adjudicated cases that seemed to bear directly upon the question, and were unable to find any at the time that were in point, but believed the opinion to be founded upon sound principles of law. Further research has confirmed us in this view. The authorities will be cited and discussed later on. Counsel do not controvert the soundness of the decision in *Rader* v. *Barr,* 22 Or. 495, (29 Pac. 889,) but contend that it has no application to the case at bar, and assign as the sole ground for this contention that the provisions of the decree to which they take exception are without the scope of the pleadings. But, conceding the premises to be true, *non constat* that the conclusion contended for would follow. Let us examine the premises, and determine their effect in a case of this nature.

3. As a general proposition all provisions of a decree outside of the issues raised by the pleadings are void, but this cannot be predicated of a consent decree. All the authorities cited by counsel support the general proposition, but are not applicable to consent decrees. Nor is any allusion made in these authorities to such decrees, except in *Jones* v. *Davenport,* 45 N. J. Eq. 77 (17 Atl. 570). This was a suit to set aside a deed to certain real property as fraudulent and void as against creditors. The complaint also contained a general allegation that a certain one hundred shares of bank stock had been transferred in fraud of the creditors. The lower court by its decree set aside the deed, but refused to disturb the transfer of bank stock, for the reason that the allegations of the complaint

were insufficient to show a fraudulent disposition of
such stock. Afterwards an amended decree was en-
tered under the same pleadings, by consent of the par-
ties, as of the date of the original, decreeing that the
transfer of the stock was also fraudulent. Subse-
quently, however, upon application to the same court,
the decree as so amended was declared to have been
irregularly entered, and for that reason set aside.
Upon appeal to the supreme court VAN FLEET, V. C.,
said of this proceeding: "There can be no doubt that
that decree was an absolute nullity. The principle is
authoritatively settled that a decree or judgment on a
matter outside of the issue raised by the pleadings is
a nullity, and is nowhere entitled to the least respect
as a judicial sentence." But a consent decree is not
in a strict legal sense a "judicial sentence." "It is,"
says Mr. Gibson in his excellent treatise entitled Suits
in Chancery, § 558, "in the nature of a solemn con-
tract, and is, in effect, an admission by the parties
that the decree is a just determination of their rights
upon the real facts of the case, had such been proved.
As a result, such a decree is so binding as to be abso-
lutely conclusive upon the consenting parties, and it
can neither be amended or in any way varied without
a like consent, nor can it be reheard, appealed from,
or reviewed upon a writ of error. The one only way
in which it can be attacked, or impeached, is by an
original bill alleging fraud in securing the consent."

Mr. Beach, in his Modern Equity Practice, § 792,
says: "Parties to a suit have the right to agree to
anything they please in reference to the subject-mat-
ter of their litigation, and the court, when applied to,
will ordinarily give effect to their agreement, if it
comes within the general scope of the case made by
the pleadings." See, also, *Pacific Railroad* v. *Ketchum,*

101 U. S. 297. In *Schermerhorn* v. *Mahaffie,* 34 Kan, 108,
(8 Pac. 199,) it was held that a decree rendered by
consent of the parties was not void as between them-
selves, because it did not give to each just what the
petition called for, and what ought as a matter of
right have been given to each of them. Chancellor
WALWORTH, in *Bank of Monroe* v. *Widner,* 11 Paige, 533,
(43 Am. Dec. 768,) says: "An agreement to refer a
suit pending to an arbitrator, and that a judgment
shall be entered in the cause in conformity with his
decision, will justify the entry of a judgment accord-
ingly, which judgment will be binding upon the par
ties, as a judgment by consent." Chief Justice WAITE,
in *Pacific Railroad* v. *Ketchum,* 101 U. S. 297, after giving
utterance to the language quoted above from Beach's
Modern Equity Practice, says: "It is within the power
of the parties to this suit to agree that a decree might
be entered for a sale of the mortgaged property with-
out any specific finding of the amount due on account
of the mortgage debt, or without giving a day of pay-
ment. It was also competent for them to agree that
if the property was bought at the sale by or for the
bondholders, payment of the purchase money might be
made by a surrender of the bonds. * * * All these
were matters about which the parties might prop-
erly agree; and, having agreed, it does not lie with
them to complain of what the court has done to give
effect to their agreement." *Fletcher* v. *Holmes,* 25 Ind.
458, was a case wherein suit was brought to foreclose
a mortgage in which neither the mortgage nor the
complaint to foreclose showed any right to a personal
decree against the defendant, but he appeared, and
with his consent one was rendered. Regarding such
decree the court says: "It cannot be doubted that
without May's consent such a judgment against him,

upon that complaint, would not have been warranted. We need not say whether or not it would have been void. But he consented to it. Was it then void as against May, because the complaint did not allege sufficient facts to justify it without such consent? We can conceive of no reason why a judgment entered by agreement, by a court of general jurisdiction, having power in a proper case to render such a judgment, and having the parties before it, should not bind those by whose agreement it is entered, notwithstanding the pleadings would not, in a contested case, authorize such a judgment. The object of a complaint is to inform the defendant of the nature of the plaintiff's case. It is for his protection that it is required. If he wishes to waive it, or agrees to the granting of greater relief than could otherwise be given under its averments, without amendment, and such relief is given by his consent, we think that the judgment is not even erroneous; and much less void as to him."

A judgment or decree entered upon the pleadings or after contest must fall within the issues raised by the pleadings, but a consent decree will be valid and binding upon the parties if its provisions fall within the general scope of the case made by the pleadings. This distinction is clear and incisive, and, it will be seen by the foregoing authorities, is recognized both by the text writers and the courts. In a recent case just reported a suit was instituted by the Central Trust Company of New York to foreclose a mortgage given by the Marietta and North Georgia Railway Company, with which was consolidated a creditor's suit by V. E. McBee and others against the trust company and others to restrain the prosecution of the foreclosure suit, and the enforcement of other liens claimed upon the mortgaged property, and praying for

a sale, and payment of their claims from the proceeds.
It was decreed, among other things, "that the coun-
sel representing the claimants in the original bill of
*V. E. McBee and Company et al.* v. *Knoxville Southern Rail-
road Company et al.,* viz., Washburn and Templeton, are
entitled to compensation out of the general fund aris-
ing from the sale of the road for their services in
bringing said sale, and administering the assets of
said insolvent railroad company, and a lien is declared
upon said fund in their favor." This portion of the
decree was approved by the circuit court of appeals
of the United States Sixth Circuit. TAFT, J., speak-
ing for the court, says: "The complainants who filed
the creditors' bill and brought in all the lien holders
did a work in the administration and direction of the
assets of the railroad company beneficial to all con-
cerned. For services in filing the bill, therefore, and
bringing in all lien claimants, it was not improper for
the court to order a fee paid to complainants' counsel
out of the fund realized from the sale": See *Central
Trust Company* v. *Condon,* 14 C. C. A. 314 (67 Fed. 84, 110).
In *Central Railroad* v. *Pettus,* 113 U. S. 124, (5 Sup. Ct.
387,) which was a creditors' suit, it was held that
"when an allowance to the complainant is proper on
account of the solicitors' fees, it may be made directly
to the solicitors themselves, without any application
by their immediate client." This doctrine was based
upon the authority of *Trustees* v. *Greenough,* 105 U. S.
527. So that we here find authority for entering a de-
cree directly in favor of the attorneys for the plaintiff.
These were creditors' bills, it is true, but the decrees
were rendered in contested cases, without issues being
formed under the pleadings by the attorneys or solic-
itors as parties litigant. Now, in the light of these
authorities, can it be said that the decree here pur-

ports to adjudicate matters outside of and beyond the general scope and purview of the case made by the pleadings? As was said in the former opinion, the plaintiff sues as trustee, each step taken by him was in the capacity of a trustee, and whatever sum of money he may realize by a sale under the decree of the court would come into his hands as trust funds, to be distributed to the bondholders in just proprotion to their several demands. Under the terms of the mortgage he is entitled to recover a reasonable attorney's fee, together with his costs and disbursements. Now, if, by his direction, and with the consent of the defendant, it is decreed by the court that he recover the attorneys', referee's, and stenographers' fees in trust for the very persons whom he has employed, and who have rendered him services in his capacity as trustee, there exists no good and sufficient reason why it should not be binding upon all the parties interested, and the right to have execution issue at their instance would not affect its legality. The decree of the court has, at his instance, only extended his trusteeship, as regards the funds to come into his hands, so that he has become trustee to the use of his attorneys and the officers of the court, as well as the bondholders, of a fund in which they are all entitled to share, and whether the property brings a small or large sum cannot change the situation. Aside from all this, when it is determined that plaintiff is party to a decree from which there is no appeal, a determination of this question upon either contention would still leave this court powerless to relieve him in this proceeding. We still adhere to the opinion, and the reasoning upon which it is based, that plaintiff is without a remedy by appeal,

and no good results could come of enlarging upon it here.

4.  Another question briefly.   It is insisted ''that an attorney at law has no implied authority to enter a consent decree, or to consent to a decree by which a definite fee is given to him, and made a first lien upon the property which is the subject of the action.''   Conceding the soundness of this proposition, it is not apparent how it can aid the appellant, in the absence of proof that the act complained of was done without express authority.   We cannot say here in this proceeding that Messrs. Crawford and Hyde acted only upon their implied authority from Schmidt. There is not a scintilla of evidence in the record to show whether they acted with or without authority, and, for all that appears, they may have had the most ample and complete power and authority to request, consent to, and have entered just such a de· cree as was entered, and which the plaintiff now seeks to have reviewed on appeal by this court.   In *Pacific Railroad* v. *Ketchum,* 101 U. S. 297, Chief Justice WAITE says: ''A solicitor may certainly consent to whatever his client authorizes, and, in this case, it distinctly appears of record that the company assented through its solicitors.   This is equivalent to a decree finding by the court as a fact that the solicitor had authority to do what he did, and binds us on appeal so far as the question is one of fact only. The remedy for the fraud or unauthorized conduct of a solicitor, or the officers of a corporation, in such a matter, is by an appropriate proceeding in the court where the consent was received and acted on, and in which proof may be taken and facts ascertained.''

28 OR.—3.

The law governing the reciprocal and correlative duties of attorney and client are well settled, and if these attorneys have exceeded their authority to the injury of the appellant he is not without a remedy, but it is not by an appeal, unless facts accompany the record to show the dereliction of duty.

A REHEARING IS DENIED.

Argued April 15; decided July 22, 1895; rehearing denied.